We've got four cases today involving all the same parties, but none have been consolidated. I think we do them all as separate, involving separate patents, so we'll hear them individually. The first case is 19-1370, Cook Group Incorporated v. Boston Scientific. May it please the Court. There is no dispute that the Board made two legal errors in reaching the conclusion that Cook did not meet its burden of proving unpatentability with respect to Claim 20 of the 027 patent, as anticipated by Malecki. Boston does not dispute that the Board relied on the wrong embodiment of Malecki in the final written decision. So the question, therefore, is whether it was harmless error. So I wanted you to address whether it was or not. Correct, that is the question. And in order to make a determination of whether those two errors were harmless, it would require this Court to make fact findings in the first instance about the operation of Malecki's embodiment number two, which the Board did not make. We believe that it should be remanded to the Board in the first instance to make those factual determinations, but I can go ahead and discuss why it was harmful. The two embodiments of Malecki have different clamps. Boston argues that the Board's decision with respect to Malecki embodiment number one, and specifically the statement that Malecki does not describe any distal movement of stabilizing rod 378, carries over to Malecki embodiment number two, and that therefore there was no harmful error. But that's not the case. Even before the Board, Boston had argued and acknowledged that the two embodiments of Malecki, even though they share the same clamp applier, work differently. But do they work differently in this material way? That's really the question. They do. So if you look at pages 12 and 13 of the yellow brief, there's a side-by-side of the two Malecki embodiments that shows both the clamp... Which page are they on? 12 and 13. 12 and 13. So it has the same clamp applier, and in 12 and 13, we've colored the components green or orange, and the green components connect to one another. The sizing is a little off in the patent figures, but the green components would connect to one another, and the orange components would connect to one another in each of the embodiments. In Malecki embodiment number one, the stabilizing rod is actually the component that would be turned, whereas the hollow, dry body would be held steady. And then in Malecki embodiment number two, the opposite would be done. The stabilizing rod would be held such that it doesn't rotate, while the hollow, dry body would be rotated. But the board did actually, though, cite the correct portion of the specification when it said that there's nothing in the specification that describes just a movement on the stabilizing rod, right? The portion of the specification that the board discussed, which I believe is at column 17 of Malecki, is a discussion of Malecki embodiment number one, not Malecki embodiment number two. But I think that, so the clamp applier works in the opposite way between the two. And then the difference in the operation is illustrated on pages 13 and 14 of the yellow brief. And I think this is really clear. The limitation at issue in claim 20 is whether the control member moves distally relative to the sleeve. And if you look at Malecki figures 27A and B, which should be reproduced on pages 12 or 13 and 14. That wasn't the issue the board was considering, right? I mean, the board was focusing on the movement of the stabilizing rod. So is there a difference in how the stabilizing rod operates in the two embodiments? Yes, relative to the sleeve. Yes, there is. And that's illustrated on pages 13 and 14 of the yellow brief, the side-by-side of Malecki. But relative to the sleeve was not an issue that the board was considering at that point, right? Right. They were analyzing relative to the clip, which is not actually a limitation of claim 20 of the 027 patent. So that's the second legal error that the board committed. It was looking at the wrong limitation that doesn't exist in claim 20. Claim 20 requires... That's why it's harmful error. Right. Well, there's both aspects. The wrong embodiment was considered and also the wrong limitation. Sticking with the wrong embodiment with a distal movement relative to the sleeve, if you look at figure 27A of Malecki, you'll see the yellow component that we've colored. That's where the stabilizing rod would be. It's located proximal to the sleeve in 27A. And then when the clip is opened in 27B, now that portion where the stabilizing rod would be, the control member, is actually within the sleeve. So it is moved distally relative to the sleeve in operation. So the difference in the way that the clamp appliers work does make a difference in terms of the relevant limitation. Turning now to the board's error in the construction, which the board analyzed whether or not there was distal movement relative to the clip as opposed to the sleeve. I think one of the most powerful pieces of evidence that shows that there was harmful error there is the fact that the board itself recognized at the institution phase that this was a harmful error. In the original institution decision, pre-SAS in this case, the board had denied institution of claim 20, finding that there was no distal movement relative to the clip in Malecki. Cook moved for reconsideration, and the board granted that motion, finding that, yes, there could be distal movement relative to the sleeve. Yet inexplicably in the final written decision, the board repeated the same error that it had made in the pre-SAS institution decision, again, rejecting Malecki as not anticipatory based on distal movement of the control member relative to the clip. So you used the word inexplicably, and I guess I might agree with that. Is there any theory about why the board, in your view, erred here? This is kind of a unique kind of thing where they looked at the wrong bottom. We do have a theory, but there's a little bit of conjecture here. There was a situation with these two particular IPRs where the board had stated that they were going to issue the final written decision on the same day. One of the decisions came out, and the parties apparently alerted the board that the other decision was missing, and then a rushed decision was issued a few days later. So we just think there may have been an error due to the timing. But it's speculation on my part. I'm apologizing beforehand if I start confusing the cross-appeal issues with the appeal issues in these cases because there's a lot going on. But this is the case where you're making the argument about SACIR, right? And the obviousness conclusion in the board. So why don't you move to that? Yes, that comes up in three of the different appeals, and this is one of them. The board legally erred in finding that Cooke did not meet its burden of proving that claims 4 through 6, 15, and 20 of the 027 patent were not rendered obvious based on the combination of SACIR and Nishioka without considering all of the evidence that was presented to it. Specifically, well, let me go back. We're talking here about the failure to consider the argument made by the patent being a preliminary response. That's correct, and the preliminary response... What's the impact if we say that they should have at least considered it? The board made a finding. The sole thing that the board relied on in rejecting obviousness was its fact finding that the evidence was, quote, evenly divided between Cooke's theory of SACIR's operation and Boston's theory of SACIR's operation. So if any additional evidence is put on the scale here, the admissions of Boston at the preliminary patent owner stage, then the scale would tip in Cooke's favor, and Cooke would have met its burden of proving by preponderance of the evidence. Wouldn't the board have the right if we said you should have considered this to say, well, we consider it, but we give it no weight. We don't believe it deserves any weight. That would be the same as excluding it entirely. You're saying they just didn't consider it. You consider all kinds of things, and you weigh them, but as the fact finder, you can decide that they are entitled to whatever weight you think. It should have been given at least some weight. Let's take a hypothetical. Suppose in a district court case, and we're dealing with, I think, one of the federal rules of evidence. Somebody admits that he was in Boston on February 3rd, and then later on, he says, well, I checked my calendar, and the calendar entry that I was relying on was altered by my son, who was playing with crayons, and actually now I look at it, and I see that I wasn't in Boston on February 3rd. It was three days later. Can't the fact finder under those circumstances say, well, that explanation is convincing. I don't attribute any weight to the supposed admission. Here, Boston has not identified it. But just let's deal with the hypothetical. I mean, it is conceivable in that circumstances that the fact finder would say, yeah, he made a mistake in saying he was in Boston on February 3rd. I'm not going to attribute any significance to the admission. Yes, I agree with Your Honor. So in other words, you're seeking a remand for the purpose of telling the board they have to think about it, which does not preclude the board from looking at it and saying, well, we've looked at it, and we don't think any weight is assigned. I mean, that's an option open to them in this case. It should be at least a remand, but we believe that Your Honors could reverse because of the evenly divided finding. And if there is any additional evidence, however small, on the scale, it would be a reversal. And we think this is actually quite powerful evidence. There is nothing in the record. Has there already been a discussion in the hearing in the first time when you've already been at the board? Has there been a discussion and an explanation provided by Boston Scientific about all of this? Has this already been sort of litigated? By an explanation, do you mean, like, have they explained that they made a mistake? Well, it made a mistake, or that was before I saw the expert. Obviously, it was just attorney argument. I made it at the early stages. I mean, has there been a debate before the board about how this happened? They have not before the board. Their position on appeal has been that it was attorney argument, and, therefore, it could be discounted. But wasn't there actually a discussion at the hearing where the board actually said, I'm not going to consider it? The board did state that they were not going to consider it. There had to have been a discussion for them to say they weren't going to consider it, right? It wasn't a discussion as to how the mistake was made. It was just a statement that they're not going to hold them to it because it was in the patent owner's preliminary response. So that was the reasoning at the hearing before the board. Well, the board could still say we're not going to hold them to it, even if they have to recognize that under the rules of evidence that it comes in as substantive evidence as an admission. In this IPR, they said they weren't going to hold them to it. In one of the related IPRs, they actually analyzed why they were rejecting the admissions in the final written decision. That's the 371 patent IPR. That was all based on attorney argument, right? Right. They said that it was patent owner's preliminary response, and it was attorney argument. They weren't going to consider it. And so that's the reasoning that we have. The board deemed it to be from the patent owner's preliminary response and decided they would not consider the admissions of counsel. There's no explanation as to anything changing. This is not a situation where somebody made a mistake in their calendar. This is the same prior art reference, the same excerpts from the same prior art reference that were relied on the preliminary patent owner's response and then later in the proceedings. Nothing has changed. There's no mistake here. It's just Boston felt that this position worked in their favor during the patent owner's preliminary response. It wasn't an offhand statement. It was two pages of analysis as to how SACIR worked. Can I just say, hypothetically, we send it back, the board looks at it, and they say it was attorney argument. They changed their position after they brought in the expert. We're just not going to give it any weight.  Would it be an abuse of discretion? Well, that would be... I think if it was not given any weight, I believe it would be with substantial evidence standard of review. If they exclude the evidence, it would be abuse of discretion, but then if there's an underlying legal error, that's a legal error, you review the law de novo. So the other thing about the SACIR prior art reference is that they're even setting aside the board's legal error, not considering the admissions. The substantial evidence does not support Boston's position. We put on blue brief page 42, the side-by-side of Boston's theory of SACIR's operation, and Cook's theory... Cook's theory is on the left, and it's a reproduction... On what page were you? Blue brief 42. Thank you. Cook's theory is on the left, and it's reproduced straight from SACIR figures 15 through 17. We just added some annotations and highlighting to explain what's going on. But Cook's theory is that SACIR works through a ball-and-socket connection. The two components, the clamp and the plier, connect axially along the axis of the clamp. Boston's theory is on the right, and that's illustrated from a sketch from their expert. And as you can see, in order to... Boston theorizes that there would be machined openings on the side of SACIR's clamp-applier that are not actually depicted in the figures in SACIR, and that those arrows in SACIR's figure through 17 should actually be turned perpendicularly to show that the clamp and clamp-applier connect from the side. It directly contradicts the figures in SACIR, and therefore, we believe there's not substantial evidence to support the board's finding that the evidence was even evenly divided in this case. Okay, even leaving aside the statement... Even leaving that aside. But certainly, that only strengthens the case that the board made an error here and should have found that SACIR operates via Cook's theory and therefore renders the clamps... I really didn't understand your citation to CRFD. Frankly, it didn't make any sense to me. In CRFD, the parties agreed that there were two modes of operation in the prior art and that they were equally likely understandings. But here, what they're saying is, we can't figure out how it operates. They're saying the evidence is equal on both sides as to how it operates. They're not saying that there are two possible operations. It's a completely different issue, isn't it? We actually think it's factually similar because my reading of CRFD is that the board there found that it could not determine whether or not the transmission of the session history occurred after the session history was complete or during the time that the session history was occurring. But in that circumstance, both parties agreed that it could happen either way. And you're not agreeing that either one of these are options under SACIR? We believe it's only, the Cooke's theory is the only one that's viable. Here, the issue is completely different. The board is saying the evidence doesn't tell us how this works. It's very different than saying, well, we all know how it works. But in CRFD, the board just said, we can't figure out which one, which option it's using. That's very different than this. I think it's the same, actually. I think the board here says that we can't decide between Cooke's theory or Boston's theory, but we know it has to be one of the two. And under those circumstances, if you have, for obviousness at least, if there's two choices, just because there's a second choice, it doesn't make the first one non-obvious. And we think that's the situation here. If this were anticipation, you know, a finding that SACIR might operate in one of two ways may not be enough. But this is obviousness. And if there's a finding that the prior art works in one of two ways, it should be non-obvious. But the board didn't say it can operate in two different ways. And the only question is, which one is being used? What the board said here was, we can't tell at all how it operates. I don't agree with that reading. The board said the evidence was evenly divided between the two modes. So the board seemed to recognize that one of those two was the correct way, but could not make up its mind between the two. Okay. You're over your rebuttal time, so let me hear from the other side and I'll receive questions later. May it please the court. The Boston Scientific patents at issue today originated from, excuse me, the development of Boston Scientific's immensely successful resolution clip. The evidence in the record is that when the resolution clip entered the market in 2005, the market was... I think we get that from the briefs. Let's start with the admissions question. Why under, let's say, under the Federal Rule of Evidence 801, an admission by an employee or agent is binding on the party? So if your lawyer says something, that's an admission, isn't it? Well, it can be. It can be an admission, but the... It can't be dismissed as just lawyer argument, right? Well, I think that the board could choose to weigh it. The argument made in a preliminary response, and I think, in fact, here the board did weigh it. As we see in the 135... Well, I say the 135. So are you agreeing that it has to be considered as an admission? It doesn't have to be considered as an admission. Certainly... Why not? Well, for there to be an admission, it has to be... An argument like that or a statement has to be clear and unambiguous. Well, it's pretty clear what was said, whether it's clear that it was right or that the lawyer had the information that he really needed before he made that argument. It's pretty clear what they said in terms of the operation of SEPIR, right? It's not, Your Honor, in the sense that it doesn't say what the appellant suggests it says. The appellant says that... You didn't argue that in your brief, right? In your brief, you said its lawyer argument shouldn't be considered. You didn't say that it didn't say what Cook says it says. We did make... You're right, Your Honor. We did make the argument that attorney argument isn't evidence. And you never made the other argument. You didn't argue that it didn't say what Cook reads it as saying. We didn't make that precise argument. That's true. At the same time, I think it's fair to ask when... When you're asking, is it an admission, is there some clear and unambiguous statement that supports what the appellant says? Well, I think you need to proceed with the assumption that under 801, it's an admission. The question is, how much weight does it get? And you're saying... What you're really saying is it shouldn't get any weight because it doesn't say what they think it did. And if anything, it actually supports our view. Well, I'm not quite going that far. I'm not saying that the statement wasn't a misstatement or an inartfully worded statement. It was, and I think we say that in our briefs, and I think we said that to the board. What I'm saying is that it doesn't... It's not so inartful as to support the appellant's position because it doesn't say that the way that these two things, the clamp and the clamp applier engage, is axially. All it says is that... But you didn't make that argument in your brief, right? That's right, Your Honor. Did you have this discussion with the board? I understand that the board actually addressed this to some extent in the other IPR. It did. The way that these hearings worked is that they were all combined. In other words, we discussed each of these IPRs in the context of a single hearing, and certainly over the course of that hearing, it was discussed. And as I was mentioning in the 135 IPR, which is the 1413 appeal we'll get to later today, the board expressly says, and I think Your Honor commented on this previously or earlier, that they considered... They saw that the patent owner made a statement in the preliminary response, and they weren't going to give it any weight. So they say why they weren't going to give it any weight? They said that it was a preliminary attorney argument, and we clarified our position after engaging an expert, which is the case. So I think they did explain that they, one, considered it, and two, why it didn't affect their view of the evidence concerning SACIR. And I believe I can give you a citation. Yes, please. Let's see here. Okay, it's appendix... The citation is appendix 49, but it's in the 1413 appeal, to be clear, so not in this one. Okay. So, Your Honor, I'm looking at the bottom of the page. We've considered petitioner's argument that patent owner changed its position from the preliminary response. And then continuing on to appendix 50, they talk about how, in this instance, patent owner obtained guidance of Dr. Viticunas, who is our expert, as to the meaning of open laterally. Given the context of these IPRs, which were all argued together, we have a common piece of prior art across multiple of these IPRs and very similar limitations. It's fair to read what the board said in the 135 as informing its analysis across each of these IPRs. I turned to Mielecki just for a moment to say that I think that the board's... You agree there was an error in the board decision with respect to Mielecki and not considering it by number two, right? No, Your Honor, I think that actually the... Oh, you don't agree there was an error? I don't believe there was an error because there is a portion of the board's decision that talks about Actuator Housing 324B, which is... that comes from the right Mielecki embodiment, Mielecki embodiment number two. So, in fact, what the board does in the context of analyzing Claim 20 and Mielecki is it discusses... Did you argue in your brief that there wasn't an error? I thought that you argued in your brief that it was harmless error. I believe what we... We did make that argument. That's right. We made the argument that it was harmless error, but I... Where did you make the argument that it was not error? Well, I think what we said is, in essence, the stabilizing rod, 378, is the same. No, wait, just show me where you said that it wasn't an error in the first place. Okay. What we said, Your Honor, is that the board's analysis of Mielecki embodiment one is applicable to Mielecki embodiment two with respect to stabilizing rod 378. That's page 44 of... I believe it's the red brief. Okay, but that seems to be a suggestion that didn't make any difference. In other words, it's harmless error. And you say that at the top of page 45. You say, regardless of any misdescription, the board... That's... I'm sorry, I didn't mean to interrupt. That's right, Your Honor. We say that, regardless of any misdescription, there's no distal... There's not any distal movement of stabilizing rod 378 in either of the two embodiments. And if there's no distal movement of the stabilizing rod 378 in either of the two embodiments, that necessarily means that there's no distal movement relative of what the appellant said on reply. They now said that was the stabilizing rod. That there can't be any distal movement of that structure relative to any other structure. The other point here on Mielecki is that the board independently found that the appellant had changed its theories between its petition and reply. And that alone is sufficient. That decision... And then it went on to analyze the reply theory. But the board's decision that the theory that was being advanced on reply wasn't the one in the petition is sufficient by itself to affirm on Mielecki. But did they say that the argument had been waived because of the change in theory? Yes, they said it was a new argument on... Can you give us a page number? Let's see if I can find that. Let's see here. Let's see here. Your Honor, this is on appendix page 110. The two paragraphs are petitioner for the first time in reply and then down the next paragraph because this new argument is not raised... Because this is a new argument not raised in the petition, it is improper. But this sounds as though it's addressing Am I mistaken about that? Well, I think that if we read pages 110 and 111 together, what I was referring to earlier, Your Honor, is the middle paragraph on page 111 where it talks about the rotation of actuator housing 324B. That is a structure found in Mielecki embodiment number two, not number one, which is why I said earlier that the board actually did address both embodiments and in any event, the stabilizing rod 378 is the same in both embodiments. So if the sleeve moves past the rod, is that distal movement relative to anything? So no, because what you actually have with both Mielecki embodiments is rotational movement. Both Mielecki one and Mielecki two involve this actuator housing or in Mielecki embodiment one, it's a hex head and they rotate. So the stabilizing rod is not moving at all. The hex head or the actuator housing is going to rotate proximally and the jaws of the clamp are going to open and then it'll rotate distally, the jaws of the clamp will close. But the stabilizing rod, which is what, on reply, Appellant said was the control wire or control element, doesn't move distally at all. But the sleeve moves, right? The actuator housing rotates. It'll rotate proximally and it'll rotate distally. But the stabilizing rod doesn't move distally at all. But the stabilizing rod would move relative to the sleeve No, no, Your Honor, I would disagree because I don't think the stabilizing rod isn't moving so it can't move distally relative to that actuator housing. So do you want to get you across the field? Yes. The Nishioka reference, the board made two fundamental errors with respect to the Nishioka reference. The first error is in its application of the construction of the term clip. Nishioka is a biopsy forceps. It discloses sharp serrated cutting jaws. These are shark's teeth. They're designed to plunge into tissue and to cut it. The board said that Nishioka discloses that those biopsy forceps are a clip because of some testimony that you could hold, if you had a pruning shears, you could use those pruning shears to hold a branch. That's like saying you could have a pair of scissors or something in the shark's mouth and if you don't apply the pressure that you need to apply to cut, you're now holding it and pinching it. That's not the case. You're just not applying enough force to break through the tissue or to break through the paper. I can hold a piece of paper with the scissors. I can hold it. It's not the easiest way, but I'm not clipping the paper. So that's the board's first error is in its determination that these sharp serrated cutting jaws of the biopsy forceps constitute a clip. They do not. The second error is... I mean, you say it was error, but the board just disagreed with you, right? I mean, there was expert testimony from Cook's expert saying that, in fact, that this is how it works. That they're capable of applying both compressive and shear forces and applying pinching pressure, which is clipping. Well, we have to look at what the expert said, which is if you have a pruning shears and you don't actually close the shears like you would when you clip tissue, then you're applying a pinching pressure. That's not what the patent, the 027 patent, and all of these patents are talking about. They actually differentiate between clips, clamps, sutures. They don't even bother with biopsy forceps because that's so far... Those sharp jaws are so far afield. No one uses a pruning shears and says, well, I'm going to now clip this branch while I hold these pruning shears. The way that the pruning shears operate is you have to press it down and then you're not pinching the branch. You're not pinching tissue with the biopsy forceps. So you're just asking us to say that the expert testimony on the pruning shears concept was just wrong. Well, I think it's not applicable. We're talking about a different point. We're talking about using the pruning shears or the biopsy forceps in a way that's not the way that those are used. You don't go up to a sample with biopsy forceps and just push down a little bit. You actually use the biopsy forceps to cut the tissue. I assume you made all these arguments to the board and they found Cook Group's expert testimony more persuasive. Well, but I would submit an overbroad construction of what a clip does. When they say that a clip has compression legs to pinch tissue, that's what a clip does. That's what a binder clip does with paper. That's not what biopsy forceps do. And there's no argument that biopsy forceps used as intended are pinching the tissue. That's the issue that we have. It's when you use it some other way, not intended, that they suggest that there's another way. You've exceeded your time. We'll reserve a couple minutes. Thank you. I'd like to start with Melecky. I think the detailed discussion that counsel and your honors have been having about the operation of Melecky embodiment numbers one and number two underscores the fact that there is a fact issue here that should be remanded to the board with respect to the board's error on Melecky. Explain your theory to me, because I still don't understand it, how the rod moves distally. Not how anything else moves, but how the rod is moving distally. It's shown in figures 27A and B that the component of the rod, 378, is in the yellow portion, and it moves forward when the clip is open, so it moves distally. It's not rotated, right? The sleeve is rotated, but as a result of it is moved forward. It's shown in the figures. Which figures are those again? 27A and B of Melecky, which are reproduced on yellow brief pages 13 and 14. Okay. The rod does connect to the clip in Melecky embodiment number two, as opposed to connecting in... And so it's not the component that's going to be rotated. That's the difference, but the operation also, as a result, it's going to move distally relative to the sleeve at least, but not the clip because it's attached to the clip. I don't have figures on my... Are you talking about the yellow brief? Thank you. I think it's page 12. Page 12? Yeah. So show me the rod moving. This is not the correct figure. Hold on a second. Let's go to Melecky itself. Which is at appendix 169. 161? And my counsel told me that 37 has an introduction of the color. 37? Correct. My apologies. Okay. So 27A, which is the middle figure there, shows in yellow, that's where the control member of the stabilizing rod is going to be, 378. And it's located approximately to the sleeve when the sleeve is closed in Melecky embodiment number two. And then below that, the yellow component where the control member is going to be is within the sleeve. So it is moved distally when the sleeve is open. Counsel also raised a point that the board had made an observation that there was a new argument on reply. That point related to Melecky embodiment number one. Cook did identify the stabilizing rod of the common clamp applier in conjunction with Melecky embodiment number one and some of the other claims that are not subject to this appeal for the first time on reply. That did not relate to Melecky embodiment number two. The control member, 378, was identified from the start with respect to Melecky embodiment number two. I'd like to turn quickly to the cross appeal. Counsel points to the construction of clip and said that there was a claim construction error, but there was, missing from the discussion here is any actual claim construction error. The board recited the same claim construction that it recited in the constitution decision and that Boston agreed to in its final written decision and applied that construction, finding that there was a showing that Nishioka's clip arms apply pinching pressure. There was a lot of talk about shark's teeth and shears, but the fact is that there's substantial evidence to support the board's finding that Nishioka discloses compression legs. Didn't the board essentially have to construe the term clip, even though it never formally did so? It did construe the term clip. It actually did. In the institution decision, it mostly adopted Boston's construction and then added a requirement that there'd be pinching pressure and then it applied that construction in the final written decision. Boston's point about shark's teeth, in addition to Dr. Nicosia's reply declaration on this, rebutting this point, there's also references, a number of them in the record that showed various biopsy forceps and for grabbing tissue and pulling it up during surgical operations. Those include DeBeer, Kobayashi, and then also the record includes a picture of one of Boston's own biopsy forceps and a reference that discusses its use for grabbing tissue and pulling it up. I see that my time has expired. Thank you. You get to talk about just the cross-appeal. Just the cross-appeal, yes. Which brings us back to Nishioka and the other reason that Nishioka does not anticipate or render obvious the claims, which is that Nishioka doesn't disclose control linkages that contact the inner surfaces or inner walls of the device. The theory, and it was a theory, again, that came up for the first time on reply with respect to Nishioka, is that these control linkages engage an indentation surface in the end of that biopsy forceps. It's a cup with teeth that run around, these sharp serrated teeth that run around the edge of that cup. The proximal end of that cup in the middle has what the appellant described as an indentation feature. But the reason for that indentation feature is that you have an optical fiber channel surrounded by a steel tube that runs through there. If you would put, as was suggested, the control links, if you would connect them, which is contrary to what figure eight of Nishioka shows, if you would connect those control links to that indentation feature, now those control links are going to be in the way of the optical fiber that's passing through. So there's no way that that could work that way, and we didn't have the opportunity to present any evidence on that point because it came up on reply and the board's rules are no evidence with a surreply. So we had to make the argument, which puts us at a disadvantage, and it's just fundamentally not what the figure eight shows. You can see in figure eight, it's a cross-section. The portions that are cross-sectioned away are represented by hash marks. The control links, if they were in the cross-sectional view, would also be identified with hash marks, and they're not, which means they're connecting to the side surface, as we explained. Thank you.